UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TRAVIS CHRISTOPHER MENDEZ,

    Plaintiff,

v.                                    Case No: 2:15-cv-510-FtM-29MRM

ROBERT HEMPHILL, Dr. and
WEXFORD HEALTH SOURCES,
INC.,

    Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court upon review of the motion to dismiss filed on behalf of Defendants Wexford Health Sources, Inc. and Doctor Robert Hemphill (collectively "Medical Defendants") (Doc. #34, Motion). Plaintiff filed a response in opposition (Doc. #43, Response). This case is ripe for review.

**I. Facts**

Plaintiff Travis Christopher Mendez, a Florida prisoner, initiated this 42 U.S.C. § 1983 action by filing a Civil Rights Complaint Form (Doc. #1). Plaintiff is proceeding in this action on his Third Amended Complaint (Doc. #19, Third Amended Complaint) against Doctor Robert Hemphill, a physician at Charlotte Correctional Institution in his official and individual capacities, and Wexford Health Sources, the contracted medical care provider at Charlotte Correctional. Plaintiff alleges that

Doctor Hemphill and Wexford Health Sources violated his Eighth Amendment rights by failing to follow the specialists' recommended courses of treatment for Plaintiff's cystic acne and instead provided cursory treatment amounting to no treatment at all. Third Amended Complaint at 14.

Specifically, Plaintiff states that since his initial receipt in the Florida Department of Corrections in 2010, he was diagnosed with severe adult cystic acne. Id. at 7. Plaintiff describes this condition as "large cysts or boils, w[h]ich vary in size and are sometimes an inch around (or long), rising up a quarter of an inch or more and at least a quarter inch deep." Id. at 8. The acne covers Plaintiff's chest, back, shoulders, neck, and head. Id. Plaintiff states that the "acne cysts rise up and fester for weeks until they burst and drain a large amount of puss, blood, and little white acne nodules." Id. at 8.

Plaintiff alleges that he saw dermatologists in May 2011 and May 2013, both of whom recommended Accutane treatment for his cystic acne. Id. at 7. Additionally, Plaintiff states that the May 2013 dermatologist recommended an antibiotic course of treatment called Isotretinion. Id. at 8. Since 2014, however, when Defendant Hemphill began overseeing Plaintiff's medical care at Charlotte Correctional, Plaintiff alleges that Hemphill refused to provide him with the dermatologists' recommended treatment. Id. Plaintiff claims Hemphill told Plaintiff that: he "doesn't

care if Plaintiff is in pain"; that "[the cystic acne] wasn't going kill the Plaintiff"; "he doesn't have to follow specialist orders"; and "he did not have to make Plaintiff 'look pretty.'" Id.

Plaintiff alleges the cystic acne causes him serious pain when eating, showering, shaving, sleeping, exercising, and even when turning his head. Id. at 9. Plaintiff states that the acne causes Keloid scaring on his skin and baldness on his scalp. Id. at 10. Plaintiff further claims that the untreated cystic acne caused him to get a lymph node mass from "acne toxin," which required surgical intervention. Id. at 12-13. As relief, Plaintiff seeks declaratory relief, injunctive relief, and monetary damages. Id. at 16.

Defendants Hemphill and Wexford Health Sources move to dismiss. Defendants argue that Plaintiff's claim "is in essence that he disagrees with the treatment methods used by Dr. Hemphill." Motion at 5. Defendants further argue that "based upon the multiple physicians seen, and each of their different suggestions for treatment, the proper mediation [sic] for Plaintiff [sic] treatment is not a black and white issue that should be decided by a court." Id. (citing Bass v. Sullivan, 550 F.2d 229, 231-232 (5th Cir. 1977); accord Westlake v. Lucus, 537 F.2d 857, 860 n.5 (1st Cir. 1981) ("where a prisoner has received . . . medical attention and the dispute is over adequacy of treatment, federal

courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law.")).

## II. Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in Plaintiff's Complaint as true and take them in the light most favorable to the plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009) (discussing a 12(b)(6) dismissal); Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

The Court employs the Twombly-Iqbal plausibility standard when reviewing a complaint subject to a motion to dismiss. Randall v. Scott, 610 F.3d 701, 708, fn. 2 (11th Cir. 2010). A claim is plausible where the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the

plaintiff's claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); Marsh, 268 F.3d at 1036 n.16. Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. Ashcroft, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1968-69 (citations omitted) (abrogating Conley, 355 U.S. 41 in part). Additionally, there is no longer a heightened pleading requirement. Randall, 610 F.3d at 701. Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)).

### III. Applicable Law and Analysis

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges,

or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

Plaintiff's claims concerning his medical treatment invoke the protections of the Eighth Amendment. Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010)(citations omitted). In order to state a claim for a violation under the Eighth Amendment, a plaintiff-prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Hudson v. McMillan, 503 U.S. 1, 9 (1992) (opining that a prisoner must demonstrate a "serious" medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care. . . ."). This showing requires a plaintiff to satisfy both an

objective and a subjective inquiry.  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000)).

First, a plaintiff must show that he had an "objectively serious medical need." Id.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id.

Second, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); and (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007) (quoting Farmer v. Brennan, 511 U.S. 825, 842 (1994)).  "A

difference in medical opinion does not constitute deliberate indifference so long as the treatment is minimally adequate." Whitehead v. Burnside, 403 F. App'x 401, 403 (11th Cir. 2010) (citing Harris v. Thigpen, 941 F.2d 1495, 1504-05 (11th Cir. 1991)).  A doctor's decision about the type of medicine that should be prescribed is generally "a medical judgment" that is "an inappropriate basis for imposing liability under section 1983." Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating that "[m]ere medical malpractice, however, does not constitute deliberate indifference.  Nor does a simple difference in medical opinion").  "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Co. Pet. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504).  For example, the Eleventh Circuit previously found "that a doctor's failure to administer stronger medication . . . pending the arrival of [an] ambulance ... [was] a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983." Id. (citing Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995)). Consequently, "[d]eliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.  However, deliberate indifference to serious medical needs is

shown when prison officials have prevented an inmate from receiving recommended treatment.  Ancata v. Prison Health Services, 769 F.2d 700, 704 (11th Cir. 1985).

Accepting Plaintiff's allegations as true and giving the Plaintiff the benefit of all legitimate inferences as required at the motion to dismiss stage of review, the Court finds the Third Amended Complaint plausibly states a medical deliberate indifference claim.  With regard to whether Plaintiff's cystic acne constitutes a serious medical condition, Plaintiff alleges that two different dermatologists recognized his medical condition required medication and/or antibiotics, including Accutane and an antibiotic.

Further, the Third Amended Complaint alleges that Hemphill refused to follow the dermatologists' recommendations and did not provide Plaintiff with either the Accutane or the antibiotic. Instead, Plaintiff states that Hemphill provided Plaintiff with face washes and creams.  Plaintiff alleges Hemphill's course of treatment amounted to no treatment at all and that Hemphill told Plaintiff, among other things, that he didn't care if Plaintiff was in pain and it was not his job to make Plaintiff look pretty. Plaintiff alleges that eventually Hemphill's failure to properly treat his cystic acne resulted in a mass on his lymph node that required surgical intervention.  Thus, at this stage of the proceedings the Court finds sufficient allegations in the Third

Amended Complaint to allow the claim to proceed. Defendants' motion to dismiss is denied.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Defendants' motion for leave to file a reply to Plaintiff's response (Doc. #44) is **DENIED as moot**.

2. Defendants' motion to dismiss (Doc. #34) is **DENIED**.

3. Defendants shall file an answer within **twenty-one (21) days** from the date on this Opinion and Order.

**DONE** and **ORDERED** in Fort Myers, Florida on this \_\_16th\_\_ day of June, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: ftmp-1
Copies: All Parties of Record